IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| KYLE TINGEY, ALLEN C. STEVENS, JAMASON GARDNER and DEXTER HINES, Each Individually and on behalf of all Others Similarly Situated, <br><br> Plaintiffs, <br><br><br> BASS FISHING & RENTALS, LLC, And STEVEN JOHNSTON <br><br> Defendants. | § § § § § § § § § § § § § § § §    CIVIL ACTION NO.: 5:15-cv-705-FB |

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

Plaintiffs Kyle Tingey, Allen C. Stevens, Jamason Gardner, Dexter Hines, Jose Diosdado-Valdez, Robert Flores, Marcus George, Marlon Jackson, Eric Lewis, Ricky Lopez, Billy Lumpkin Jr., Will Moon, Jose G. Rios, Christopher Sanders, John K. Smith, Paul Summer, and Michael Whitehead (collectively, "Plaintiffs"), and Defendants Bass Fishing & Rentals, L.L.C. ("Bass") and Steven Johnston ("Johnston") (together "Defendants") (collectively, the "Parties") hereby jointly move the Court to approve the settlement reached by the Parties in this Fair Labor Standards Act case as documented in their executed Settlement Agreement and Release (the "Settlement Agreement").[1]

---

[1] The settlement is confidential. Defendants will attach the Settlement Agreement as an exhibit to their Motion for Leave to File Under Seal. The Settlement Agreement will be filed as a restricted document and subject to restriction until the Motion for Leave to File Under Seal is determined by the Court.

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND DISMISSAL**                                                             **PAGE 1**

## I. NATURE OF ACTION AND PROCEDURAL BACKGROUND

On August 19, 2015, Kyle Tingey ("Tingey") and Allen Stevens ("Stevens") filed the present collective action under section 216(b) of the Fair Labor Standards Act ("FLSA") against Bass, on behalf of themselves and all others employed by Bass as salaried Pumping Supervisors, Pumping Operators, or in similar salaried capacities. On September 2, 2015, Tingey, Stevens and opt-in plaintiffs Jamason Gardner ("Gardner") and Dexter Hines ("Hines") (collectively, "Named Plaintiffs") filed both a First Amended and Substituted Collective Action Complaint ("First Amended Complaint"), adding individual defendant Johnston, and a Motion for Conditional Certification, for Disclosure of Contact Information, and to Send Notices. In their First Amended Complaint, Named Plaintiffs alleged that Defendants misclassified them and putative class members as exempt from the overtime requirements of the FLSA and paid them a salary and a day bonus when, in reality, they were non-exempt employees who should have been paid overtime at their regular rates of pay, calculated to include day bonuses, for all hours worked over forty in a workweek. Named Plaintiffs' further alleged that Defendants failed to accurately track all hours they and putative class members worked.

On October 19, 2015, Defendants filed their Answer to Plaintiff's First Amended Complaint, denying Plaintiffs' allegations and any wrongdoing with respect to Plaintiffs' employment. Defendants continue to strictly deny all liability of any nature. Nevertheless, on November 17, 2015, without waiver of their ability to later move for decertification and/or summary judgment on Plaintiffs' claims, Defendants agreed to conditional certification of a class of all former and current employees of Bass who, like Named Plaintiffs, are or were employed as salaried Pump Operators and/or salaried Pump Supervisors at any time since August 19, 2012.

The Court entered an order granting the Parties' Agreed Motion for Conditional Certification on January 6, 2016, providing for notice to putative class members and an opt-in period of ninety (90) days from the date notice was issued. Thirteen (13) individuals opted in to the suit during the opt-in period, namely Jose Diosdado-Valdez, Robert Flores, Marcus George, Marlon Jackson, Eric Lewis, Ricky Lopez, Billy Lumpkin Jr., Will Moon, Jose G. Rios, Christopher Sanders, John K. Smith, Paul Summer, and Michael Whitehead ("Opt-In Plaintiffs").

The Parties subsequently engaged in extensive discovery, including answering four sets of written discovery and producing approximately 3,812 pages of documents as well as spreadsheets containing wage and hour data for all Plaintiffs for the three-year period preceding Plaintiffs' suit. Although the dates of employment and pay data for the Plaintiffs were largely not in dispute, the Parties did dispute and disagree on, without limitation: (1) the number of overtime hours worked without compensation and/or proper compensation at their regular rates of pay; (2) the applicable statute of limitations; (3) the applicability of the Motor Carrier Act exemption (codified at 49 U.S.C. § 13502) in Section 13(b)(1) of the FLSA to Plaintiffs; (4) the applicability of the Small Vehicle Exception to the Motor Carrier Act (codified at SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-224, 112 Stat. 1572, 1620 (2016)) to Plaintiffs; (5) the applicability of the executive exemption in Section 13(a)(1) of the FLSA to Opt-In Plaintiff Will Moon; and (6) the availability of liquidated damages under the FLSA. In light of these issues, the Parties agreed to attempt resolution of the lawsuit through mediation.

Mediation was held on July 21, 2016, before an experienced FLSA mediator, William H. Lemons. The mediation was attended by Plaintiffs' counsel, a representative of Bass, and Defendants' counsel.[2] Late in the afternoon of July 21, 2016, after lengthy negotiations facilitated

---

[2] The Parties agreed prior to mediation that Johnston could attend the mediation telephonically as needed.

by the mediator, the Parties reached a confidential agreement to settle this case on behalf of all Plaintiffs. The Parties now request the Court's approval of their executed Settlement Agreement and Release.

## II.     ARGUMENT

**A.     Legal Standard.**

Although court approval may not be required in this Circuit, *see Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 255 (5th Cir. 2012), the Parties are seeking approval of their Settlement Agreement because Plaintiffs' claims arise under the FLSA. *See* 29 U.S.C. § 216; *Aguirre v. S&B Eng'rs & Constructors, Ltd.*, 2015 U.S. Dist. LEXIS 159288 (E.D. Tex. Nov. 18, 2015) (citing *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)); *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960, 961 (5th Cir. 1947). It is well settled that an employee may release FLSA claims brought against an employer in the context of a private lawsuit if the parties present the district court with a proposed settlement and the district court determines the settlement provides "fair and reasonable resolution of a bona fide dispute." *Lynn's Food Stores*, 679 F.2d at 1353; *see also Sculte, Inc. v. Gandi,* 328 U.S. 108, 113 n.8 (1946); *Jarrad,* 163 F.2d at 961.

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores,* 679 F.2d at 1353. There is a "strong presumption in favor of finding a settlement fair." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008); *see also Sierra v. E.M.S.P., LLC*, 2015 U.S. Dist. LEXIS 136227 (E.D. La. Oct. 5, 2015) (stating that the Court must remain aware that a settlement is a compromise, a yielding of highest hopes for certainty and resolution). Where the settlement

resulted from arm's length negotiations between experienced counsel after meaningful discovery, the Court may presume that the settlement is fair, adequate, and reasonable. *See Lucas v. Kmart Corp.,* 234 F.R.D. 688, 693 (D. Colo. 2006); *see also Whittington v. Taco Bell of Am., Inc.,* 2013 WL 6022972 (D. Colo. 2013) (citing *In re BankAmerica Corp. Secs. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court... should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.")).

As set forth below, the settlement in this case resolves a *bona fide* dispute and is a fair, adequate, and reasonable resolution. Accordingly, it should be approved by the Court.

**B.    A *Bona Fide* Dispute Existed Between the Parties.**

The Parties' claims and defenses raise *bona fide* issues of fact and law such as the following:

1) How many hours of overtime did Plaintiffs work?

2) Did Defendants correctly classify some or all Plaintiffs as exempt from the FLSA's overtime requirement?

3) Were any or all Plaintiffs exempt from the FLSA's overtime requirement by virtue of their driving commercial vehicles weighing in excess of 10,000 pounds to and/or from jobsites, including those across state lines, bringing them within the Motor Carrier Act's overtime exemption? *See* 49 U.S.C. § 13502.

4) In what weeks, if any, did Plaintiffs drive vehicles weighing less than 10,000 pounds, which, under the Small Vehicle Exception, would disqualify them from the Motor Carrier Act's exemption to the FLSA's overtime requirement?  *See*

>    SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-224, 112 Stat. 1572, 1620 (2016).

5)  Is Opt-in Plaintiff Will Moon, who served as the Field Supervisor over Bass' entire Pumping Division, exempt from the overtime requirements of the FLSA under the executive exemption for any or all of his employment within the limitations period? *See* FLSA § 13(a)(1).

6)  If Bass misclassified some or all Plaintiffs as exempt, is it liable to Plaintiffs for liquidated damages under the FLSA?

7)  What is the proper measure of damages?

8)  What is the appropriate statute of limitations?

The contested nature of these issues demonstrates that the settlement involves a *bona fide* dispute about exemption status and non-exempt time worked rather than a compromise of substantive rights guaranteed by the FLSA. *See Martin*, 688 F.3d at 255.

**C.  The Settlement Is a Fair, Adequate and Reasonable Resolution.**

**1.  Overview of Settlement Terms.**

Under the Settlement Agreement, Defendants agree to pay specified amounts to the seventeen (17) Plaintiffs. The amounts are calculated based on Plaintiffs' actual weekly wage data divided by an estimated average the number of hours Plaintiffs worked during the relevant three-year limitations period in which the Plaintiffs were paid a salary and day bonus and did not receive overtime pay, and then proportioned to each Plaintiff based on each Plaintiff's tenure with Defendants.. Payments to Plaintiffs will in part be subject to tax withholding. In addition, the Settlement Agreement provides that Defendants will pay service awards to the four Named Plaintiffs (*i.e.*, Tingey, Stevens, Gardner, and Hines), and Plaintiffs' attorneys' fees and costs.

### 2. The Proposed Settlement Resulted from Arm's-Length Negotiations.

The Settlement Agreement was the product of arm's-length negotiations by experienced counsel and has the salutary effect of both (1) providing substantial relief to Plaintiffs, and (2) eliminating the inherent risks both sides would bear if this complex litigation continued to decertification motion practice and/or resolution on the merits. Such negotiations allowed the Parties to bridge the significant gap between the Parties' settlement positions and obtain the resolution described. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc*., 679 F.2d at 1354 (recognizing courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness). Moreover, the Settlement Agreement was negotiated through the efforts of an experienced wage and hour mediator.

### 3. Plaintiffs Face Substantial Risk if Litigation Continues.

The Settlement Agreement also is fair and reasonable because significant obstacles exist if litigation continues, whereas the settlement offers substantial and immediate relief. Significantly, Defendants' liability and the amount of damages remain uncertain. For example, because some or all of the Plaintiffs regularly drove commercial vehicles weighing well in excess of 10,000 pounds to and from job sites across state lines, and could have been called on to do so in any week they were employed by Defendants, Plaintiffs face notably evidentiary challenges in establishing they were not exempt from the FLSA's overtime requirements by virtue of the Motor Carrier Act Exemption, codified at 29 U.S.C. § 213(b)(1). Additionally, Opt-In Plaintiff Will Moon served as the Field Manager responsible for Bass' entire Pumping Division for the duration of the relevant time period, substantially supporting his exempt classification and undermining his ability to recover damages in the present action.

Similarly, Plaintiffs will face challenges in establishing the amounts of overtime they worked each week, if any, given the varying demands and duration of the projects to which they were assigned, downtime among field assignments when Plaintiffs would have been unlikely to work overtime if at all, and other considerations. The Settlement Agreement, therefore, provides Plaintiffs with substantial value because it assumes each worked at least forty (40) hours of overtime per workweek and pays damages based on their regular rates of pay generated from Plaintiffs' actual wage and hour records.

### 4. The Settlement Provides for Fair and Reasonable Attorneys' Fees and Incentives.

The attorneys' fees are reasonable and fair as well. Plaintiffs' contingency fee arrangement, to which Plaintiffs are bound, provides for the payment of a 40% contingency fee plus costs. A contingency payment in this general range is well within the scope of what courts have approved as reasonable. *See, e.g., Villarreal v. Source Refrigeration & HVAC, Inc.,* No. 1:12-cv-00243 (W.D. Tex., Oct. 8, 2013) (order granting joint motion for approval of settlement [Dkt. # 71]) (approving 40% contingency fee in an FLSA collective action); *Quintanilla v. A & R Demolition Inc.*, No. H-04-1965, 2008 U.S. Dist. LEXIS 37449, at *23-25 (S.D. Tex. May 7, 2008) (same); *Vaszlavik v. Storage Technology Corp.*, 2000 WL 1268824, *4 (D. Colo. Mar. 9, 2000) (noting that a contingency fee award "in the middle of the ordinary 20%–50% range is presumptively reasonable"); *Barnard v. Intertek USA Inc.*, No. 4:11-cv-02198 (S.D. Tex. Jan. 8, 2014) (order granting joint motion for approval of settlement [Dkt. 184]) (approving 40% contingency fee in an FLSA collective action).

The Settlement Agreement also is fair because it provides for a reasonable incentive award to Named Plaintiffs Tingey, Stevens, Gardner, and Hines, who participated in filing Plaintiff's Original Complaint – Collective Action and/or Plaintiff's First Amended Complaint and for

serving as the class representatives. The Settlement Agreement calls for a modest incentive award, which is consistent with sums typically awarded in collective action settlements. *See, e.g., Quintanilla,* 2008 U.S. Dist. LEXIS 37449 at *10 (approving award of $1,000 to named plaintiffs in collective action settlement and noting that "[s]uch awards may be made in class-action lawsuits to compensate named plaintiffs for the services they provide and burdens they shoulder during litigation) (citing *Camp v. Progressive Corp.*, No. 01-2680, 2004 U.S. Dist. LEXIS 19172, at *23-24 (E.D. La. Sept. 23, 2004) (approving incentive award of $5,000 to named plaintiffs in FLSA collective action)); *Tennille v. W. Union Co.*, 2013 WL 6920449, at *14 (D. Colo. 2013) (approving incentive award of $7,500). All Named Plaintiffs have been part of this lawsuit since the filing of the First Amended Complaint and were instrumental in identifying the alleged wage violations and building the case. They spent substantial time communicating with class counsel regarding case developments and assisted counsel in understanding Bass' business. Moreover, Named Plaintiffs' agreement to bring this suit as a putative collective action significantly delayed (and continues to delay) their receipt of compensation. Counsel believes Named Plaintiffs' claims could have been settled long ago if not for the complicating aspect of collective allegations.

### III.   CONCLUSION

Accordingly, the Parties respectfully request that this Court approve their Settlement Agreement.

Respectfully submitted,

By: /s/ Josh Sanford (by permission)  
    Josh Sanford  
    Texas Bar No. 24077858  
    *josh@sanfordlawfirm.com*

    SANFORD LAW FIRM, PLLC  
    One Financial Center  
    650 S. Shackleford Rd., Suite 411  
    Little Rock, Arkansas 72211  
    Tel: (501) 221-0088  
    Fax: (888) 787-2040

**ATTORNEYS FOR PLAINTIFFS**

By: /s/ Paul E. Hash  
    Paul E. Hash  
    Texas Bar No. 09198020  
    *hashp@jacksonlewis.com*  
    Justin H. Smith  
    Texas Bar No. 24041943  
    *justin.smith@jacksonlewis.com*

    JACKSON LEWIS P.C.  
    500 N. Akard, Suite 2500  
    Dallas, Texas 75201  
    Tel: (214) 520-2400  
    Fax: (214)-520-2008

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 28th day of September, 2016, I served a true and correct copy of the foregoing pleading, *Joint Motion for Approval of Settlement Agreement*, with the Clerk of the Court via CM/ECF, which will send an email notification to all counsel of record.

                                                    */s/Justin H. Smith*
                                                    ONE OF COUNSEL